JOSEPH H. MURRAY *vs*. THE LEHIGH VALLEY RAILROAD COMPANY.

Third Judicial District, New Haven, June Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A railroad company is bound to use the utmost care to guard its passengers against danger, from whatever source arising, which may reasonably and naturally be expected to occur in view of all the circumstances.

Public policy will not permit such a corporation to relieve itself from this obligation by any contract with others.

A railroad company entering into contract relations with another company, by which the safety of its own passengers may be affected, will be held to have made the other company its own agent in this respect.

The defendant, by contract, ran its trains for about a mile over the tracks of the Central Railroad Company of New Jersey, but subject to the latter's control and direction. The plaintiff, a passenger on a train of the defendant company, was injured in jumping off to escape a threatened collision with a train of the Central Railroad Company following

on the same track. *Held* that the trial court properly charged the jury that the persons operating the train of the Central Railroad Company might be regarded, for the purposes of the case, as the servants of the defendant.

The defendant offered testimony to show that the threatened collision was due to the willful act of those in control of the engine of the following train, between whom and the trainmen of the defendant's train a bitter feeling existed on account of a labor strike. *Held* that this evidence was immaterial. (*Two judges dissenting.*)

[Argued June 5th—decided July 19th, 1895.]

ACTION to recover damages for personal injuries sustained through the alleged negligence of the defendant; brought to the Superior Court in New Haven County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment for the plaintiff for $500 damages, and appeal by the defendant for alleged errors in the rulings and charge of the court. The defendant also moved for a new trial upon the ground of a verdict against evidence, which motion the trial court denied. *No error.*

This action was brought against the Lehigh Valley Railroad Company and the Central Railroad Company of New Jersey. The defendants severed in their defense, and by order of the court the trials were separated. The Lehigh Valley Company, the sole defendant in this court, pleaded a general denial and issue thereon was joined to the jury. The plaintiff had a verdict. The defendant appealed to this court. There is also a motion for a new trial for a verdict against the evidence.

Upon the trial the plaintiff claimed to recover damages for injuries done to him while a passenger on a train of this defendant from Allentown in the State of Pennsylvania to Jersey City in the State of New Jersey, on the 3d day of December, 1893. It appears that the plaintiff was on that day a passenger on a train of this defendant, as above stated. It also appears that a portion of the track over which the defendant runs its trains, between what is called Oak Island Junction and Brill's Station, a little less than a mile, belongs to the Central Railroad Company of New Jersey, and that the trains of the latter company also run over the same piece

of track; that this defendant operated its trains upon that piece of track, pursuant to a contract with the Central Railroad Company by the terms of which the trains of this defendant, while on that part of the track, were under the rules and orders and control of the Central Railroad Company, and were bound to obey the orders and signals of that company; that the tower, or signal-man, at Oak Island Junction where the trains of the defendant entered upon this portion of track, and under whose orders they were admitted to enter upon it, was an employee of the Central Railroad Company, and gave directions for the trains of that company as well as for the trains of this defendant; that the train of this defendant on which the plaintiff was a passenger, was admitted upon this piece of track by the order of the signal-man, and proceeded along the same in obedience to the orders of the Central Company; that soon thereafter a regular train of the Central Railroad Company was admitted upon the same piece of track, and allowed to approach so near to the said train of this defendant as to put the plaintiff in peril of his life, and that there was needless whistling of the locomotives, and shouts and commands of the defendant's servants; that the plaintiff, being in peril of his life, jumped from said train and received the injuries for which this suit is brought.

The court instructed the jury as follows :—

"If these facts be found proved, then I instruct you that the plaintiff, being a passenger on the Lehigh Valley Railroad Company, is legally entitled to the same degree of safety upon this portion of the track as upon any other portion. And that it was the duty of the defendant, the Lehigh Valley Railroad Company, by its contract with the Central Railroad Company, to provide for its trains and its passengers that degree of skill and care and diligence which common carriers of passengers are by law required to exercise.

"For this purpose the Central Railroad Company may be regarded as itself one of the servants of the defendant, the Lehigh Valley Railroad Company. The servants of the Central Railroad Company operating trains upon this portion of the track, may be considered the servants of the Lehigh Val-

ley Company. The track, for the purpose of operating its trains, must be regarded as the track of the Lehigh Valley Company, and both trains may be regarded as the trains of the Lehigh Valley Company for the purposes of this case. This defendant cannot, by a contract with another company, escape any of the duties or responsibilities which the law imposes upon the carriers of passengers. It is under the same obligation, whether it owns a track or hires one, whether it exercises control over its own track and its own trains, or contracts with another to furnish a track and to exercise the control which it is itself bound to exercise.

" To entitle him to a verdict, the plaintiff must prove that the defendant, the Lehigh Valley Company, was guilty of negligence which was the approximate cause of injury to the plaintiff ; and in determining this question of negligence you are to take into consideration the facts to which I have already referred, and the law applicable thereto, and all the other testimony in the case. Upon this question of the negligence of the defendant, you may regard the Lehigh Valley Company as responsible, not only for the presence of its own train upon that track at that time, but also for the presence of the other train on the same track at the same time and in the place in which it was, provided the trains were there by reason of the failure of the Lehigh Valley Company through its servants, or of the failure of the Central Railroad Company by its servants, while executing their employer's business within the duty and scope of their employment, to exercise that degree of care and diligence required of carriers of passengers for hire."

The case was submitted to the jury upon instructions to which in other respects no objection was made. The errors assigned were from this part of the charge, and from certain rulings in respect to the admission of evidence.

*George D. Watrous* and *Edward G. Buckland*, for the appellant (defendant).

I. The defendant's liability to the plaintiff is not that of an insurer ; it is merely to use due care in performing its con-

tract to carry him. 2 Wood on Railroads, § 296. And in this case, from the nature of the accident, the burden of proving negligence is upon the plaintiff. 2 Wood on Railroads,. § 325a; *Curtis* v. *R. & S. R. Co.*, 18 N. Y., 534.

II. The court erred in instructing the jury that the persons operating the Central train were the servants of the Lehigh Co., so as to make it liable for their acts, in threatening a collision.

The Lehigh Co. contracted to exercise great care in performing this contract, but it was not required to provide against an accident which it could not possibly either have foreseen or provided against, and which had nothing to do with the carrying of the plaintiff. *Wright* v. *Midland R. Co.*, L. R. 8 Ex., 137; *Sprague* v. *Smith*, 29 Vt., 426; 2 Wood on Railroads, § 324, and note; 2 Redf. Railways, § 189, and note; 2 Harris Damages by Corp., § 844. Here the Central R. R. Co. is the *owner* of the tracks in question; it allows. its tenant, the Lehigh Valley Co., to use those tracks subject to a code of rules and regulations, but subject always to the special orders of the Central Co.'s higher officials. The court has, if the relationship exists at all, gotten the position of the parties reversed.

III. The court erred in charging the jury that the plaintiff was legally entitled " to the same degree of safety " upon the Central tracks as upon any other portion of this journey. The question is one of conduct and not of consequences. And in this respect we think the jury was led to infer that because a collision upon the carrier's own line would almost inevitably subject it to liability, the same would be true upon tracks. which it is only entitled to use in common with others. A very high degree of caution might not prevent the tortious acts of those others; and exactly so it proved in this particular case.

IV. The court erred in striking out the testimony as to declarations made by the persons on the Central engine at the time of the approach of the engine and the threatened collision.

The declaration was clearly part of the *res gestæ*, and if

true, was strong evidence to show the animus of the persons in charge of the Central train. It was, therefore, material because it directly tended to show that the act of the Central Co., through its employees, was, as to the Lehigh Co., the act of a willful and malicious trespasser. *Pinney, Exr.,* v. *Jones*, 64 Conn., 549, 550; Reynolds on Evidence, § 7; *Enos* v. *Tuttle*, 3 Conn., 250; 1 Greenleaf on Ev., 145, and note *b*; *R. R.* v. *Coyle*, 55 Pa. St., 396.

The evidence to show that the Central train was ahead of time was also clearly admissible, as it tended to exempt the defendant from negligence.

V. The verdict was clearly against the weight of the evidence, and a new trial should be granted upon that ground.

*Tilton E. Doolittle,* for the appellee (plaintiff).

I. The verdict is clearly and manifestly in accord with the evidence. But if otherwise, we do not see how the question can be raised upon the record. If the defendant claimed that the verdict was against the evidence, it might apply to this court for a new trial on that ground, and ask the trial court to certify the evidence to this court. The defendant has two remedies, one by a motion for a new trial in the Superior Court, and one by direct application to this court; but he cannot have both remedies. *Bissell* v. *Dickerson*, 64 Conn., 61.

II. The rulings of the court below on the questions of evidence, were so trifling and immaterial that no new trial should be granted, even if there was error. But there was no error.

It is of no consequence to this plaintiff, that some one on one train called some one on the other train a vile name. How does that affect the question of the defendant's negligence?

The second reason, that there was a strike and ill feeling between the crews of the two trains, is also immaterial. The evidence, if admitted, would tend to prove that they were mad at each other and more likely to be negligent on that account. It was of no consequence to the plaintiff who was

to be carried safely, so far as human foresight could guard and protect him. *Flint* v. *Norwich Trans. Co*, 34 Conn., 554, 13 Wall., 3.

III. This charge was as favorable as the defendant was entitled to. The defendant was guilty of gross negligence, if it ran its trains under the direction of another railroad company. The man who was in the signal tower and gave directions to the conductor of this train, was the joint servant of the two defendants, and was guilty of negligence in permitting the defendant's train to run on to the New Jersey Central's tracks when it was a half hour late, out of its time and on the time of the New Jersey Central.

ANDREWS, C. J. The controlling question presented by the appeal in this case, arises on the charge of the court to the jury. That being disposed of, the other assignments of error become unimportant. And in the charge that question is narrowed to this: Was the court correct in saying to the jury that the servants of the Central Railroad Company while operating its trains on that portion of its track used in common by that company and this defendant, might, for the purposes of this case, be regarded as the servants of this defendant? A recurrence to the duties which the law imposes on every railroad company as a carrier of passengers, will serve to make the answer to this question more distinct.

A railroad corporation, by the contract for a passage over its road, assumes the obligation to exercise the highest practicable degree of human skill to carry the passenger in safety, and undertakes absolutely to protect him against any injury or willful misconduct of its servants in the performance of its contract; and the obligation in these respects continues until the contract is fully performed. *Dwinelle* v. *R. R. Co.*, 120 N. Y., 117. Every carrier of passengers for hire—although not like a common carrier of goods, an insurer against everything but the act of God and the public enemies—is bound to use the utmost care which is consistent with the nature of the business, to guard the passenger against all dangers from whatever source arising, which may reasonably and naturally

be expected to occur, in view of all the circumstances and of the number and character of the persons with whom the passenger will be brought in contact. The carrier must provide safe, sufficient and suitable vehicles for transportation, and must provide such servants for the management of the same, and make all such reasonable arrangements therefor, as the highest care of a prudent man would suggest as necessary to a safe passage. *Hall* v. *Conn. River Steamboat Co.*, 13 Conn., 319; *Fuller et Ux.* v. *Naugatuck R. R.*, 21 id., 557; *Flint* v. *Nor. & N. Y. Trans. Co.*, 34 id., 554; *Simmons* v. *Steamboat Co.*, 87 Mass., 361; *Palmeri* v. *M. Ry. Co.*, 133 N. Y., 261; *Pendleton* v. *Kingsley*, 3 Clif., 416.

This duty is imposed by law; and this measure for its performance rests upon a railroad corporation to its full extent. A railroad corporation is a carrier of passengers by virtue of the franchise granted to it by its charter; a franchise intended to be used for the public good. By asking for and receiving the franchise, the corporation comes under the obligation to answer in damages to every one who may be injured by any negligence in the use of the privilege it has so received. And public policy will not permit the corporation to relieve itself from this obligation by any contract with others. A railroad company entering into contract relations with another company, by which the safety of its own passengers may be affected, is held to have made the other company in this respect its own agent. It is held to the exercise of due care for the safety of all persons, while exercising its franchise, whether on its own road or that of another company. This duty was imposed by law when it received its charter, and this duty holds good at all times and in all places. If the company operates its trains over the road of another company, it must see and know that the track is in good and safe condition, and that the trains of the other company are so ordered as not to interfere with the full discharge of its own duty to its own passengers; because such trains would be a danger against which it would be bound to provide. If a railroad company permits another company to run its trains upon its track, it is liable for any want of care of its

lessee, and may be sued therefor, the same as though the trains were its own. If a railroad company leases its entire road and all its rolling stock to another company, it remains liable for all the laches and neglect of its lessee, (except in cases where the lease is approved by the legislature) as fully as if it was itself operating its road ; on the theory that the lessee, whether a lessee of a part or of the whole, is the agent of the lessor. *Driscoll* v. *Nor. & Wor. R. R. Co.*, 65 Conn., 230 ; *Lakin* v. *Willamette Valley & Coast R. R. Co.*, 13 Oregon, 436 ; *Va. Midland Ry. Co.* v. *Washington*, 86 Va., 629 ; *Whitney* v. *A. & St. Lawrence R. R. Co.*, 44 Me., 362 ; *Stearns* v. *Same*, 46 id., 95, 116 ; *Wyman* v. *R. R. Co.*, ibid., 162 ; *Nugent* v. *R. R. Co.*, 80 id., 62 ; *Nelson* v. *Vermont & Canada R. R. Co.*, 26 Vt., 717, 721 ; *Clement* v. *Canfield*, 28 id.; 302 ; *McElroy* v. *R. R. Co.*, 4 Cush., 400 ; *Railroad Co.* v. *Barron*, 5 *Wall.*, 90, 104. And on the other hand, if one railroad company runs its trains over a portion of the road of another company, pursuant to a contract whereby it is agreed that its trains, while on such leased road, shall be under the control and direction of the servants of the lessor company, then the servants of the lessor company at such place and for the time being, are the servants of the lessee company, and it will be liable for any injury to a passenger caused by the negligent act of such servant, as though he was its own employee.

The case of the *Wabash, St. L. & P. Ry. Co.* v. *Peyton*, 106 Ill., 534, 540, is an application of this rule. That was a case almost exactly like the one now before us. That case was an appeal. In the lower court the appellee had recovered judgment. It was shown that the appellant, by a lease of a portion of the road of the Chicago & Western Indiana R. R. Co., was permitted to run its trains over a portion of the track of the latter company near to a station, to and from which its trains ran and departed. By the terms of the lease the lessor company had the control of the passenger train of the appellant while on that portion of track, and its servants directed and controlled the trains of the appellant in coming to and going from that station. The appellee was injured

while a passenger on a train of the appellant, by the negligence of the yard master of the lessor company. The court said: "The controlling question of the case, * * * is whether the appellant is freed from liability by placing, by the lease or agreement, its employés and trains, at the place where the injury occurred, under the control of the road master of the other road. Appellant did so as a matter of interest or choice, and not from overpowering necessity. When the charter was granted the corporation became a common carrier of persons and property, and the law imposed the duty of common carrier, with all the liabilities incident to the occupation, and the responsibility was assumed by the corporation, and imposed on it by law. Nor can the corporation exonerate itself from the duty and responsibility by contract with others, nor in anywise escape or free itself from the liability, unless released by the General Assembly. Appellant voluntarily placed its engine and cars, at that place, under the control and direction of the employés of the other road, and for the time being, and for that purpose, the roadmaster of the other road became the servant of the appellant. The engine and train belonged to the appellant; the engine-driver, the fireman, the conductor and the brakeman on board of the train were its servants, under its control, and the yardmaster, under the agreement, *pro hac vice,* for the time and place, was its servant. Had the agreement not been made he would not have controlled the starting of the train. Appellant, by the agreement, authorized him to act as its yardmaster, and to act for it at that time and place, and it must be held responsible for his acts. The company cannot escape by saying he was employed and controlled by the other road. He was, as we have seen, the servant of the appellant, to the full extent he acted, in this case." *Oil Creek & Allegheny River Ry. Co.* v. *Keighron,* 74 Pa. St., 316 ; *Vary* v. *B., C. R. & M. R. Co.,* 42 Iowa, 246 ; *Laugher* v. *Pointer,* 5 B. & C. 547, 559; *Eaton* v. *Boston & Lowell R. R. Co.,* 11 Allen, 500 ; *Abbott* v. *Horse R. R. Co.,* 80 N. Y., 27 ; *St. Louis, W. & W. Ry. Co.* v. *Curl,* 28 Kan., 622 ; *Balsbey*

v. *St. L., Alton, etc., R. R. Co.*, 119 Ill., 68; *Eureka Springs Ry. Co.* v. *Timmons*, 51 Ark., 459.

The plaintiff was a passenger on the railroad of the defendant from Allentown to Jersey City. He was entitled to be carried in safety, and it was the duty of the defendant to so carry him the entire journey, whether it carried him over a track owned by itself or over a track hired of another. If the defendant for its own convenience chose to carry him a part of the journey over a hired track, it was its duty to make the track hired as safe as the track owned. If by reason of being carried on a hired track the plaintiff was exposed to a danger from which he would have been free had the track been owned by the defendant, and suffered injury therefrom, then for such injury the defendant is liable to him. Pierce on Railroads, 283.

The case shows that in the use of the portion of track owned by the Central Railroad Company, this defendant was bound by its agreement with that company to obey the orders and signals given by the servants of that company. The case shows then, that to the extent of that agreement and for the purposes included in it, this defendant had, by the terms of that agreement, made the servants of that company its own servants. And as the case further shows that the train on which the plaintiff was a passenger, was upon this portion of track, and was being operated in obedience to the orders of those persons who, by the agreement, were the servants of this defendant, we think the charge was fully justified.

The verdict having established that the danger of collision to which the train of the defendant was exposed, was caused by the negligence of the defendant's own servants, the several rulings in respect to the admission of testimony become immaterial. This fact being settled, it matters not whether the men on the trains were friendly or unfriendly to one another, nor whether the train of the defendant was behind time, or the train of the Central Company ahead of time, nor what any person on the rear train may have said, or omitted to say.

The motion for a new trial on the ground that the verdict is against the evidence must be denied. In considering the

evidence the jury was bound to accept the charge of the court as correct. And in the light of the charge there was abundant evidence to support the verdict. Indeed, the jury could not well have reached a different result.

There is no error. A new trial is denied.

In this opinion FENN and HAMERSLEY, Js., concurred.

BALDWIN, J. (dissenting). If the apparent danger of collision, which induced the plaintiff to jump from the car, was due to the negligence of the Lehigh Valley Railroad Company or its servants, there was a good cause of action against it; but there was none, in my opinion, if the accident was due to the willful act of a servant of the Central Railroad Company, outside of the scope of his employment. The Lehigh Valley Railroad Company claimed, upon the trial, that it was due to such a willful act, on the part of those in control of the locomotive of the Central Railroad Company. In support of this claim it offered testimony from its division superintendent, that on the day in question there was a strike on its road, and its trains were being operated by non-union men, while the Central Railroad trains were being run by union men; that there was ill feeling on the part of these union men towards the non-union men; that in consequence thereof the accident occurred which resulted in the damage to the plaintiff for which the suit was brought; and that a certain remark was heard by John M. Robinson, the rear brakeman of the car on which the plaintiff was, from a person on the engine of the Central Railroad Company, " at the time of the approach and stopping of said engine, threatening a collision." The exclusion of all this testimony constitutes, in my opinion, sufficient ground for maintaining the appeal.

The finding shows that the plaintiff's evidence tended to prove that a train of the Central Railroad, upon a dark and foggy night, was pushed up within ten or fifteen feet of the car in which he was riding, and was apparently about to crash into it, when he jumped off to save his life.

The Lehigh Valley Railroad Company, in explanation of

this dangerously near approach to its train of the train behind it, offered to show that it occurred in consequence of unfriendly feeling on the part of those controlling the Central Railroad train towards those controlling the train ahead of it. Such a consequence, from such a cause, could only have been occasioned by a willful and wrongful abuse of the power intrusted by the Central Railroad Company to its servants, for managing the course and speed of the train in question. If the union men on the Central Railroad engine were apparently intending to use it as a catapult, or were threatening to do so, in order to intimidate the non-union men in charge of the Lehigh Valley Railroad train, it was a malicious tort, so far outside the scope of their employment as to exonerate even their own employer from any liability for such damage as might be occasioned. *Crocker* v. *New London, Willimantic & Palmer R. R. Co.*, 24 Conn., 249, 265. It would be "an act of positive and designed injury not done with a view to the master's service, or for the purpose of executing his orders." Pierce on Railroads, 279. "If the servant, under guise and cover of executing his master's orders, and exerting the authority conferred upon him, willfully and designedly, for the purpose of accomplishing his own independent, malicious, or wicked purpose, does an injury, then the master is not liable." *Cohen* v. *Dry Dock, etc., Railroad Co.*, 69 N. Y., 170, 174.

The trial court has found that "no testimony was offered to prove that any person in control of the Central Railroad train was, in fact, actuated in this affair, by any feeling of hostility, or did any intentional act which sprung from that motive." The evidence, however, was at the same time certified up at length by the court, for our consideration upon the motion for a new trial on the ground that the verdict was against the evidence. In the evidence thus certified, appears that of John M. Robinson, the rear brakeman of the car upon which the plaintiff was riding. He testified that a stop signal was given by the Lehigh Valley Railroad train, the customary answer to which was two whistles; that the engineer of the Central Railroad train did not give this

answer, but continued right on, and, as he neared them, blew a long, shrill whistle; and that some one on the latter's engine, just as it finally slackened speed, a short distance behind the rear car of the train ahead, shouted to the witness, "you scab sons of bitches"; "scab" being a word of reproach used by union men in referring to non-union men. The court ruled that these words might have been a mere expression of vexation at finding the Lehigh Valley train on the track, and behind time; and struck out the testimony regarding it.

The only reference to the particular nature of this testimony in the finding prepared for the purposes of the appeal, is that which I have previously mentioned; and whether in that finding the words " threatening a collision " can be understood as characterizing the remark which was excluded, is quite doubtful. It might with perhaps more propriety be read as referring to the engine, or the approach and stopping of the engine. Be this as it may, both parties have argued this exception as if the remark in question had been duly incorporated in the finding, and it would seem to me a sacrifice of substance to form to disregard it, in view of the passage which I have quoted from the finding, to the effect that no testimony was offered to prove any intentional act of malice on the part of the union men in charge of the Central Railroad train. The reason given by the trial court for ordering Robinson's testimony about this remark to be stricken out, shows that that order was based on the opinion that as the words used might have indicated mere vexation, they ought not to be allowed to go to the jury as evidence of hostility or hostile acts. In my judgment this ruling proceeded upon a mistaken view of the law which, under the special circumstances of this case, may and should be taken into account by us in determining the true meaning and effect of the finding. *Styles* v. *Tyler*, 64 Conn., 432, 439. What this language, heard by Robinson, meant, what disposition it evinced, who said it, and what light it threw on the accompanying acts, were all questions, it seems to me, proper for the consideration of the jury. *Ritchie* v. *Waller*, 63 Conn., 155.

The act of running one train almost into another, which was ahead of it on the same track, in disregard of the customary signals, was one of an unusual nature. The circumstances attendant on the strike seem to offer a possible, if not a probable explanation. Coupled with the insulting and indecent remark hurled after the receding train, they might well have led the jury to conclude that the threatened collision was in the nature of a wanton and malicious assault by servants of the Central Railroad Company, not in their master's service, nor in the execution of any authority which had been confided to them. An act of doubtful meaning can often be explained by the word that went with it, or the circumstances under which it was done. I think that the passage above quoted from the finding, to the effect that no evidence was offered of hostile acts, should be read as if it stated that none was offered unless the testimony of the division superintendent and the rear brakeman could be considered such; and therefore that a new trial should be granted for errors in the exclusion of that testimony.

I concur with the court in the opinion that under the testimony admitted and instructions given, the verdict was not against the evidence in the cause. I dissent from the opinion, so far as it holds that the verdict cures any errors in excluding testimony. The jury, upon the evidence before them, were called upon to consider no other question than that as to whether the conduct of the Lehigh Valley Railroad Co., or the acts of those in charge of the second train were negligent, or not. They have found these acts to have been negligent; but had they had the excluded evidence before them, they might have attributed to them a different character.

The jury were, in effect, told that for the purposes of this case they might consider the servants of the Central Railroad Company, in charge of the rear train, as the servants of the Lehigh Valley Railroad Company. I think this was not a correct statement of the law, in view of the claim made by the latter company, that the plaintiff's injury was due to the willful and wrongful acts of servants of the other company,

done wholly outside the scope of their duty; and, furthermore, that it would not have been, had it been undisputed that the injury was due to the negligence of those in charge of the rear train.

The Lehigh Valley Railroad Company was permitted, by contract, to run its trains over a part of the Central Railroad Company's road, subject to the rules and orders of the latter company ; and this is all the record discloses as to the nature of that contract.

Under such an arrangement, and so far as the plaintiff was concerned, this part of the Central Railroad track should undoubtedly be considered, *pro hac vice*, the track of the Lehigh Valley Railroad; and the servants of the Central Railroad Company, of whose services the Lehigh Valley Railroad Company actually or necessarily made use, in running its trains over it, were, *pro hac vice*, the servants of the latter. But, in my opinion, those servants of the Central Railroad Company, of whose services the Lehigh Valley Railroad Company did not make use for this purpose, either actually or necessarily, were not in law, and as a matter of course, to be regarded as its servants. For example, the Lehigh Valley Railroad Company may be said to have necessarily made use of the track-repairers of the Central Railroad Company to keep this part of the track in good order; and their negligence in this matter would be the negligence of the Lehigh Valley Railroad Company, because they are for that purpose, *pro hac vice*, its servants. So too, for a similar reason, the man at the signal tower might properly be regarded as the servant of the Lehigh Valley Railroad Company, because it necessarily made use of his services in running its trains upon this portion of the track. It may be also true that in the management of all the necessary switches and signals and other things of a like nature, appurtenant to this common track, the servants of the Central Railroad Company, who performed these duties, were the servants of both companies, because they were engaged in doing things necessary to the running of the trains of both over the same road-bed.

The Lehigh Valley Railroad Company might be held re-

sponsible for any injuries resulting from a failure to make due provision in the contract, under which it made use of the track in question, for the admission of trains upon it only at proper intervals, and under proper conditions for securing the safety of the passengers it might carry. But the servants of each company, who only managed the trains of each, and who performed no sort of service for the other, were not, I think, in law the servants of that other, but remained throughout the servants only of the company whose trains they managed.

In the present case, the Lehigh Valley Railroad Company had no occasion for, and made no use whatever of, the services of the men in charge of this rear train, and they had no connection of any sort with the running of its trains.

According to the principles laid down in the cases of *Wright* v. *Midland Ry. Co.*, L. R. 8 Ex., 137, and in *Sprague* v. *Smith*, 29 Vt., 421, 426, I think the court below should have instructed the jury, substantially as requested, that if the injury was wholly due to the negligence of those in charge of the rear train, the Lehigh Valley Railroad Company was not liable.

I therefore dissent also from the opinion of the court as to the propriety of the charge to the jury.

In this opinion TORRANCE, J. concurred.