## STATE OF CONNECTICUT *v.* ROBERT W. SPILLANE
### (SC 16215)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.[1]

---

[1] This case was heard initially by Justices Borden, Norcott, Palmer, Sullivan and Vertefeuille. Justices Katz and Zarella were added to the panel

Motion decided August 17, 2001

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Rachel Baird*, former assistant state's attorney, for the appellant (state).

*Joel M. Ellis*, with whom was *Donald E. Weisman*, for the appellee (defendant).

to consider the motion for reconsideration and reconsideration en banc. Furthermore, at the time the motion was considered, Justice Sullivan had become chief justice.

SULLIVAN, C. J. The defendant filed a motion for this court to reconsider the decision it had rendered in the above-captioned matter on April 24, 2001, reversing the judgment of the Appellate Court. See *State* v. *Spillane*, 255 Conn. 746, 770 A.2d 898 (2001).

As we stated in *State* v. *Spillane*, supra, 255 Conn. 749–51, the jury reasonably could have found the following facts: "The defendant operated Walnut Street Services, Inc., a towing company in Hartford. Walnut Street Services, Inc., was authorized by various area businesses, including Mechanics' Savings Bank on Farmington Avenue in Hartford, to tow unauthorized vehicles from their lots during nonbusiness hours.

"Around midnight, on April 27, 1996, Webster Lewis parked his car on the street in front of Mechanics' Savings Bank and entered the apartment of his girlfriend, Andrea Gudealm. [A short time later] Lewis exited the building, [and] discovered his car was missing. Gudealm called the police from a nearby pay telephone, and the police gave her the telephone numbers of several tow companies [to call to find out if the vehicle had been towed]. Upon calling the tow companies, Gudealm located Lewis' car at Walnut Street Services, Inc. The following afternoon, Lewis proceeded to Walnut Street Services, Inc., and paid the defendant's wife, Cheryl Spillane, $148 to retrieve his vehicle. Lewis found his glove compartment open, papers scattered around the car and tools missing from the back of the car. Lewis then called the police, and larceny charges were brought against the defendant.

"The defendant was tried on two counts of larceny in the third degree in violation of [General Statutes]

§ 53a-124[2] for the wrongful taking of Lewis' car and his tools respectively, as well as on one count of risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21, as amended by No. 95-142, § 1, of the 1995 Public Acts[3] and one count of reckless endangerment in the second degree in violation of General Statutes § 53a-64[4] for an incident that occurred on October 1, 1996. At the close of the state's case, the trial court granted the defendant's motion for judgment of acquittal of the charge of larceny in the third degree with respect to the tools, and the trial continued on the remaining charges of larceny in the third degree stemming from the taking of Lewis' vehicle on April 27, 1996, as well as risk of injury to a child and reckless endangerment in the second degree, both stemming from the October 1, 1996 incident.

"Much of the trial testimony addressed where Lewis' car had been parked when it was towed. If it had been parked in the Mechanics' Savings Bank parking lot, Walnut Street Services, Inc., rightfully towed the vehicle. If, however, it had been parked on the street, as the state claimed, then Walnut Street Services, Inc., wrongfully towed the vehicle.[5] In accordance with

---

[2] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and: (1) The property consists of a motor vehicle, the value of which is five thousand dollars or less . . . ."

[3] General Statutes (Rev. to 1995) § 53-21, as amended by No. 95-142, § 1, of the 1995 Public Acts, provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, [or] the health of such child is likely to be injured . . . shall be guilty of a class C felony."

[4] General Statutes § 53a-64 (a) provides: "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a risk of physical injury to another person."

[5] "A private tow company may tow a vehicle parked on a public street only if it has been ticketed by the police. The police had not issued a ticket in this case." State v. Spillane, supra, 255 Conn. 751 n.6.

Lewis' testimony, the jury found the tow to have been wrongful and, on March 20, 1997, found the defendant guilty of larceny in the third degree. The defendant was found not guilty of the charges of reckless endangerment in the second degree and risk of injury to a child. The defendant was sentenced on May 2, 1997, to a two year suspended sentence and three years probation. He was also ordered to pay Lewis restitution in the amount of $200, participate in an anger management program, and donate $1000 to the Hartford police department outreach program." Id.

The defendant appealed from the judgment of conviction to the Appellate Court, which reversed the judgment of the trial court. *State* v. *Spillane*, 54 Conn. App. 201, 203, 737 A.2d 479 (1999). "The Appellate Court determined that the trial court improperly omitted the definition of the term 'appropriate' set forth in [General Statutes] § 53a-118 (a) (4) (B) from its instruction to the jury on the elements of larceny. . . . The Appellate Court also found that it was reasonably possible that the jury was misled by the trial court's instruction and, therefore, ordered a new trial. . . . We granted the state's petition for certification to appeal, limited to the following issues: (1) 'Did the Appellate Court properly conclude that the trial court's instructions regarding "appropriate" were constitutionally inadequate?' and (2) 'If the answer to the first question is "yes" was the error harmful?' " (Citations omitted.) *State* v. *Spillane*, supra, 255 Conn. 748–49. We held that although the trial court should have given the jury the statutory definition of "appropriate,"[6] the failure to do so was harmless, and

---

[6] "[General Statutes §] 53a-119 sets forth two different types of intent that may be established to prove larceny: when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . . Either intent to deprive or intent to appropriate must be found to convict a defendant of larceny. The state proceeded on a theory that the defendant here intended to appropriate Lewis' vehicle." (Internal quotation marks omitted.) *State* v. *Spillane*, supra, 255 Conn. 751. "[General Statutes §] 53a-118 (a) (4) defines 'appropriate' as follows: '(A) to exercise control over [the

we, therefore, reversed the judgment of the Appellate Court. Id., 756–59, 762.

In *State* v. *Spillane*, supra, 255 Conn. 760–61, we declined to address the defendant's claim that the waiver rule[7] is unconstitutional, or his claim that there was insufficient evidence to support a judgment of guilty of larceny in the third degree, because the defendant had not provided us with a complete record, including all of the trial transcripts. Thereafter, the defendant filed a motion for reconsideration and reconsideration en banc of his claims regarding the sufficiency of the evidence, the waiver rule, and the adequacy of the jury instructions. We granted the motion as to reconsideration of the sufficiency of the evidence claim only. The defendant presents us with no reason why we should reevaluate our holding that the jury instructions were adequate, and we will not revisit that issue in this opinion. Furthermore, because we conclude that the evidence in the state's case-in-chief was sufficient to support the judgment of guilty

property], or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit, or (B) to dispose of the property for the benefit of oneself or a third person.' . . . [T]he state was proceeding under the definition provided in subparagraph (B). The state did not claim that the defendant intended to keep the vehicle, but rather that the vehicle was improperly towed so that the defendant's company could collect the $148 benefit.

"Unlike subparagraph (A), subparagraph (B) contains no permanency element. Accordingly, the trial court acted properly in not instructing the jury on that term." *State* v. *Spillane*, supra, 255 Conn. 761.

[7] "Under the waiver rule, when a motion for acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without [forgoing] the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto. The defendant then runs the risk that the testimony of defense witnesses will fill an evidentiary gap in the state's case." *State* v. *Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1984).

of larceny in the third degree, we need not review the waiver rule. See *State* v. *Calonico*, 256 Conn. 135, 139, 770 A.2d 454 (2001).

The defendant claims that, in order to show that the evidence was sufficient, it was the *state's* responsibility to provide the remaining transcripts and thus complete the record. The defendant, citing in particular, *General Electric Supply Co.* v. *Southern New England Telephone Co.*, 185 Conn. 583, 441 A.2d 581 (1981), and *Engelke* v. *Wheatley*, 148 Conn. 398, 171 A.2d 402 (1961), claims that it was the responsibility of the state to provide the missing transcripts because the state was suggesting that the evidence was sufficient.

In *General Electric Supply Co.* v. *Southern New England Telephone Co.*, supra, 185 Conn. 602, the plaintiff argued "that the defendants may not on an appeal urge that a finding or conclusion is unsupported by the evidence without including in our record a transcript of the proceedings in the trial court." This court, acknowledging that no such transcript had been filed by either party, noted that "[n]either our statutes nor our rules of practice expressly require the filing of a transcript as a condition to the perfection of an appeal. . . . In our rules, the closest analogy is found in relation to claims that a verdict should have been set aside, when a party asserting the absence of supporting evidence is permitted to state that claim in his brief and submit no evidence . . . . Practice Book § 3060U."[8] (Citation

---

[8] At the time in question, 1981, Practice Book § 3060U provided: "If a party claims error in a decision of the trial court on a motion to set aside a verdict or on a motion under Sec. 321 for a judgment notwithstanding the verdict or notwithstanding the failure of the jury to return a verdict on the ground that there was no evidence to support the verdict, decision or claim of the adverse party in an essential particular, he may either state that claim in his brief and submit no evidence or he may submit all relevant evidence; but if he adopts the first alternative or if the evidence he submits does not fairly present the issue, the supreme court, in addition to any other appropriate order, and whether or not he prevails on the appeal, may direct him to pay to the adverse party so much of the expense incurred by the adverse

omitted; internal quotation marks omitted.) Id., 602–603. We held that "when the appellant puts into issue the sufficiency of the evidence to support a finding of fact by the trial court, our present rules permit the appellant to impose upon the appellee the burden of producing the evidence that is necessary for a decision by this court." Id., 603. In 1986, § 3060U was transferred to § 4077 of the Practice Book. Section 4077 was repealed, effective September 3, 1996.

Similarly, in *Engelke* v. *Wheatley*, supra, 148 Conn. 411, we noted both that the defendant "attacked, as found without evidence, findings as to certain elements of damage in the case of three of the plaintiffs," and also "that the plaintiffs failed to include in their appendix any evidence supporting these findings." Citing what were then §§ 447[9] and 448[10] of the 1951 Practice Book, we

---

party in the procuring and submission of evidence as is unjustifiably caused thereby."

[9] Practice Book (1951) § 447 provided: "Except as provided in Sec. 415, any portion of a transcript of evidence on file which a party desires to present to the court shall be printed, and only printed, in an appendix to the brief. Only evidence material to the issues shall be printed.

"If a party claims that a fact should be found on the ground that it is material and either admitted or undisputed, the evidence or transcript of proceedings upon which the claim is based should be printed.

"If a party claims error in a decision of the trial court on a motion to set aside a verdict or for a judgment notwithstanding the verdict or where no verdict was returned on the ground that there was no evidence to support the verdict, decision or claim of the adverse party in an essential particular, or if a party claims that the trial court found a material fact without evidence, he may either state that claim in his brief and print no evidence or he may print all relevant evidence; but if he adopts the first alternative or if the evidence he prints does not fairly present the issue to this court and he prevails on the appeal, this court may order that the expense of the procuring and printing of evidence by the adverse party unjustifiably caused thereby shall be set-off against the costs to which the former, as the prevailing party, would otherwise be entitled."

[10] Practice Book (1951) § 448 provided: "Wherever possible, evidence should be stated in narrative form. If either party disagrees with such a statement made by the other, he should so state in his brief and print in the appendix any evidence on which he relies to support his contention. Unnecessary and repetitious printing of testimony is to be avoided and

held: "Under our rule, this requires that they be stricken. . . . When an appellant assigns as error, and makes the claim in his brief, that a material fact was found without evidence, and does not print the relevant evidence, the burden of printing evidence to show that no error was committed is, under the rule, placed on the appellee. The rule in effect relieves the appellant of the burden, with regard to such an assignment, of showing that there was error, even though logically he should have this burden." (Citations omitted.) Id. Sections 447 and 448, after being revised and renumbered over the years, eventually were repealed.[11]

In addition to relying on sections of the Practice Book that have since been repealed, both *General Electric Supply Co.* and *Engelke* predate the current version of Practice Book § 61-10.[12] Before the adoption of § 61-10,

arguments and colloquies of counsel should be omitted. Wherever it is possible, counsel should agree upon a joint appendix which the appellant shall print at his expense in connection with his brief; and if this is done the parties shall file with the clerk of this court in the county where the case was tried a stipulation so stating.

"The testimony printed in the appendices will be deemed to embrace all testimony produced at the trial material to the issues on the appeal, although this court may, if sufficient cause appears, consult the transcript of evidence on file to supplement or explain that printed."

[11] Practice Book (1951) § 447 was incorporated into §§ 716, 717 and 718 of the 1963 Practice Book. Sections 716 and 717 became, respectively, §§ 3044 and 3045, and § 718 became §§ 3046 and 3059, in the 1978 Practice Book. Sections 3044, 3045 and 3046 were repealed, effective July 1, 1979. Section 3059 was incorporated into § 3060U as of July 1, 1979. Section 3060U then became § 4077 in 1986 and later was repealed, effective September 3, 1996.

Practice Book (1951) § 448 became §§ 720 and 721 of the 1963 Practice Book, which in turn became, respectively, §§ 3048 and 3049 of the 1978 Practice Book. Sections 3048 and 3049 were incorporated into §§ 3060Q and 3060R in 1979. Sections 3060Q and 3060R then became §§ 4073 and 4074 in 1986 and were repealed in 1996.

[12] Practice Book § 61-10 provides: "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. For purposes of this section, the term 'record' is not limited to its meaning pursuant to Section 63-4 (a) (2), but

an appellant who claimed that a material fact was found at trial without any evidence was not required to provide the reviewing court with any evidence. If the appellee then failed to provide evidence in response, the appellant prevailed. Section 61-10 requires, however, that the *appellant* provide an adequate record for review. The combination of the repeal of the sections of the Practice Book relied upon in *General Electric Supply Co.* and *Engelke*, and the adoption of Practice Book § 61-10, implicitly overruled those cases. We hereby explicitly overrule *General Electric Supply Co.* v. *Southern New England Telephone Co.*, supra, 185 Conn. 583, and *Engelke* v. *Wheatley*, supra, 148 Conn. 398, insofar as they are inconsistent with this opinion.

Because we previously have not overruled these cases explicitly, we will examine the defendant's claim that the state, in its case-in-chief, failed to present sufficient evidence to sustain a conviction of larceny in the third degree. In order for the evidence to have been sufficient in this case, the jury must have been able to find that the defendant (1) intended to dispose of Lewis' vehicle for his own benefit, and (2) wrongfully took, obtained or withheld the motor vehicle from Lewis. See footnote 6 of this opinion and General Statutes §§ 53a-119, 53a-124 (a).

At trial, Lewis testified for the state as follows. He had parked his car on the street, not in a private lot.[13] When he came out of Gudealm's apartment, his car was missing. When Gudealm called the police, they said that they had not had the car towed, and they gave Gudealm the telephone numbers for various tow companies. A telephone call to Walnut Street Services, Inc., revealed that the car had been towed there, but that Lewis could

includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety."

[13] Lewis' girlfriend, Gudealm, also testified for the state that Lewis had parked his car on the street.

not pick up the car until around noon the following day. Upon arriving at Walnut Street Services, Inc., the following afternoon, Lewis was told by the defendant's wife that he would have to give her $148 in exact change to get his car back. When Lewis gave her the money, the defendant's wife put the guard dogs away in order to permit Lewis to approach his vehicle.

Officer Albert DiStefano of the Hartford police department testified for the state that if Lewis had parked on the street, Walnut Street Services, Inc., would not have been authorized to tow Lewis' vehicle, even if he had been parked in a tow zone, unless the police had first issued a ticket. No ticket had been issued for Lewis' vehicle. Lewis gave DiStefano a sworn statement that his car had been parked on the street, not in the private lot. DiStefano went to Walnut Street Services, Inc., and spoke with the defendant's wife. He asked her to get her husband on the telephone because he had towed the vehicle. When the defendant refused to come to Walnut Street Services, Inc., to talk to DiStefano directly, DiStefano informed the defendant that he was considering filing larceny charges against him.

From the testimony of Lewis and DiStefano, the jury reasonably could have found that the defendant intended to dispose of Lewis' vehicle by towing it to Walnut Street Services, Inc. The jury also reasonably could have found that the defendant towed the vehicle in order to obtain the $148 benefit. Relying on the testimony of Lewis and Gudealm that Lewis had parked his vehicle on the street, combined with DiStefano's testimony that no ticket had been issued for a parking violation and that, therefore, the defendant was not authorized to tow the vehicle, the jury could have concluded that the taking was wrongful.

 

The motion for reconsideration is granted but the relief requested is denied; reconsideration en banc[14] is denied.

In this opinion the other justices concurred.

---

[11] Katz and Zarella, Js., join in the opinion insofar as it disposes of the defendant's motion for reconsideration en banc.