******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VIKING CONSTRUCTION, INC. *v.* TMP
CONSTRUCTION GROUP, LLC
(SC 20484)

Robinson, C. J., and D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff general contractor sought to recover damages for breach of
contract from the defendant subcontractor in connection with the defen-
dant's abandonment of work it was purportedly obligated to perform
in constructing an apartment complex. The jury returned a verdict in
favor of the plaintiff and awarded damages. The defendant filed a motion
to set aside the verdict, arguing that the parties' contract, as a matter
of law, precluded an award of any relief to the plaintiff. The trial court
denied the defendant's motion, concluding that the jury reasonably could
have based its award of damages on provisions of the contract permitting
an award of damages against the defendant for costs associated with
repairing defective work. Thereafter, the trial court rendered judgment
in accordance with the verdict, and the defendant appealed. *Held* that
the trial court properly declined to set aside the jury's verdict: to the
extent that the defendant presented arguments relying on evidence or
arguments that were presented to the jury, and to the extent that the
defendant contended that the plaintiff never claimed at trial that the
provisions of the contract obligating the defendant to cover the cost to
the plaintiff of repairing defective work entitled the plaintiff to damages,
this court was unable to assess such arguments or contention, as the
defendant failed to provide this court with transcripts of the trial court
proceedings; moreover, there was no merit to the defendant's claim
that, even if the jury had based its award of damages on other provisions
of the contract, those provisions did not entitle the plaintiff to recover
repair damages as a matter of law, as the trial court properly relied on
the provisions of the contract obligating the defendant to cover the cost
of repairing defective work in declining to set aside the jury's verdict.

Argued November 20, 2020—officially released March 16, 2021*

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of Fairfield, where the
defendant filed a counterclaim; thereafter, the case was
tried to the jury before *Stewart, J.*; verdict for the plain-
tiff on count one of the complaint alleging breach of
contract and on the defendant's counterclaim; subse-
quently, the court, *Stewart, J.*, denied the defendant's
motions to set aside the verdict and rendered judgment
in accordance with the verdict, from which the defen-
dant appealed. *Affirmed.*

*James Colin Mulholland*, for the appellant (defen-
dant).

*Luke R. Conrad*, with whom were *Timothy T. Corey*
and, on the brief, *Sara J. Stankus*, for the appellee
(plaintiff).

*Opinion*

KAHN, J. The defendant, TMP Construction Group, LLC, appeals from the judgment of the trial court in favor of the plaintiff, Viking Construction, Inc., on a claim alleging breach of contract. On appeal, the defendant claims that the trial court improperly denied its motion to set aside the jury's verdict, which contains an award of money damages, because the terms of the underlying contract precluded such relief. We disagree with the defendant and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the present appeal. In 2016, the plaintiff, a general contractor overseeing the construction of an apartment complex in the city of Bridgeport, entered into a contract with the defendant, a subcontractor, to provide services related to the installation of drywall and trim in exchange for $1.5 million. The defendant subsequently undertook performance of its work in accordance with that agreement.

Disputes eventually developed, and, on May 19, 2017, the plaintiff mailed a letter to the defendant complaining that the defendant had fallen behind schedule and had failed to meet certain financial obligations. That letter stated in relevant part: "This is your notice pursuant to [a]rticle 11.1 [of the contract] that if these defaults are not remedied within [twenty-four] hours, [the plaintiff] will supplement your crew until the remaining portion of your contract is completed. [The plaintiff] will seek damages for all losses and costs above the balance to bill of the [contract]. The remaining balance to bill is $350,685.56."[1] As a result of these disputes, the defendant abandoned its work on the project.

A few weeks later, the plaintiff commenced the present action against the defendant. The operative complaint, dated September 29, 2017, alleged that the defendant had breached the contract by abandoning performance. The complaint also alleged that the defendant had failed to provide a sufficient number of workers to complete the project on schedule, that the defendant had failed to supervise and direct its own agents, and that certain work that the defendant had performed prior to abandonment failed to comply with project specifications. The plaintiff claimed that these breaches resulted in monetary damages including, inter alia, (1) the cost of correcting the work that had been improperly performed, and (2) the cost of completing the work that remained undone.[2]

The case was tried to a jury before the court, *Stewart, J.*, over the course of several days.[3] At trial, the plaintiff sought to prove that its total damages exceeded the balance to bill ($350,685.56) on the contract by $515,080.22[4] and argued that it was entitled to an award of money damages in that amount. In support of its

claims, the plaintiff entered the contract itself into evidence as a full exhibit. The jury ultimately found the defendant liable for breach of contract but chose to award the plaintiff only $45,373.88 above the balance to bill, an amount precisely equal to the sum that the plaintiff had paid others to correct the defendant's defective work. In reaching its verdict, it is clear that the jury chose not to award the plaintiff damages for the cost of completing the remaining drywall work.

The defendant subsequently filed a motion to set aside the jury's verdict, arguing, among other things, that "the parties' contract, as a matter of law, unambiguously precluded the court or the jury from awarding any relief to [the plaintiff]." The defendant's argument was premised on the interplay of two particular provisions of the contract. The first, article 11.1, permits the plaintiff to recover costs incurred by it for labor, materials, and equipment required to cure defects or defaults caused by the defendant from the balance to bill after providing notice to the defendant.[5] The second, article 11.2, allows the plaintiff to expressly terminate the contract as the result of the defendant's delay, defective work, or nonpayment of debts after providing written notice to the defendant. This latter provision not only permitted the plaintiff to retain the balance to bill, but also provided that "all charges, expenses, losses, costs, damages, and attorney's fees" in excess thereof would be paid "directly by" the defendant.[6] The defendant's motion argued that, because the formal notice it had received from the plaintiff expressly invoked only article 11.1, and because the parties agreed that the contract had never been terminated, the plaintiff's relief was limited to the relief under article 11.1, which was retention of the balance to bill.

The trial court rejected this argument because it concluded that other provisions of the contract permitted an award of money damages against the defendant for costs associated with repairing defective work. Specifically, the trial court noted that article 11.7 of the contract, an election of remedies clause, provides that the plaintiff "may sue [the defendant] . . . and recover damages" in order to recover "[a]ny sum or sums chargeable to [the defendant] under any provision of [the contract] . . . ." The trial court then observed that the warranty provision set forth in article 9.1 of the contract, which relates directly to the repair of defective work, provides that the plaintiff "shall have the right itself, or [through] others, to remove said part of the [w]ork and to purchase from others in the market or otherwise and install new materials or equipment in replacement thereof, and the cost and expense thereof, together with the expense to [the plaintiff] of making good all other work and property destroyed or damaged by the condition requiring such replacement, shall be paid by [the defendant] to [the plaintiff] on demand."[7] The trial court found that the jury could have reasonably

based its award of damages on these provisions and, accordingly, declined to set aside the verdict. This appeal followed.[8]

We begin our analysis of the present case by briefly stating what is *not* at issue. The defendant does not presently contest the jury's finding that it was liable for breach of contract. The defendant also does not contest the claim that its work was, in fact, defective or in any way challenge the adequacy of the plaintiff's proof relating to the cost of repairing it. The issue presented in this appeal is a narrow one: whether the defendant has demonstrated, on the basis of the record presented, that the trial court committed reversible error by declining to set aside the jury's award of $45,373.88 in damages. We answer this question in the negative.[9]

The standard for reviewing a trial court's denial of a motion to set aside a jury's verdict is well established. "The proper appellate standard of review when considering the action of a trial court in granting or denying a motion to set aside a verdict is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done. . . . [T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror . . . but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 414, 78 A.3d 76 (2013).

This general standard does not, however, warrant deference to the trial court's legal conclusions. See, e.g., *Snell* v. *Norwalk Yellow Cab, Inc.*, 332 Conn. 720, 763, 212 A.3d 646 (2019) ("[a]lthough we ordinarily review the denial of a motion to set aside a verdict under an abuse of discretion standard . . . our review is plenary when . . . the trial court's decision turned on a question of law" (citation omitted)); see also *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 687–88, 41 A.3d 1013 (2012). The defendant asserts, and we agree, that a plenary standard of review applies to the extent the contract at issue employs plain and unambiguous language. *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 101, 84 A.3d 828 (2014) ("When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . [W]here there is definitive contract language, [however] the determination of what the parties intended by their contractual commitments is a question of law." (Citation omitted; internal quotation marks omitted.)).

In the present appeal, the defendant raises both legal and factual issues in support of its claim that the trial

court erred in denying its motion to set aside the jury's verdict. Specifically, the defendant argues that the contract provision the plaintiff sought to enforce, article 11.1, does not allow for the damages the jury awarded, and, even if the plaintiff had sought relief under other provisions of the contract, including article 9.1, it failed to introduce evidence from which the jury could have awarded damages under those provisions. Before addressing the particular arguments raised by the defendant, we note that, to the extent that those arguments rely on the evidence or arguments presented to the jury, this court is unable to assess them because, as previously stated; see footnote 3 of this opinion; the defendant has failed to provide this court with transcripts of the proceedings before the trial court.

We turn first to the threshold issue of whether the plaintiff sought relief under other provisions of the contract, including article 9.1. The defendant claims that it was unfairly surprised by the breach of warranty issue because the plaintiff "[n]ever raise[d] article [9.1] in support of any claim for repair damages" during the course of trial. The plaintiff argues, in response, that it relied on the entirety of the contract in presenting its claims to the jury. In declining to set aside the jury's verdict, the trial court concluded that the jury could have reasonably relied on article 9.1 in reaching the result that it did. In order to independently determine whether a breach of warranty claim under article 9.1 was made at trial, however, we would need to review the transcripts of that proceeding to assess the precise manner in which the plaintiff presented its claim for repair damages to the jury, including both its presentation of the evidence and the closing arguments of counsel. Without transcripts of the trial, however, we are unable to engage in such an assessment and resolve this claim. See Practice Book § 61-10 (a) ("It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire record is complete, correct and otherwise perfected for presentation on appeal."); see also, e.g., *State* v. *Spillane*, 257 Conn. 750, 758–59 and n.12, 778 A.2d 101 (2001) (appellant responsible for filing transcripts necessary for appellate review); *O'Halpin* v. *O'Halpin*, 144 Conn. App. 671, 675, 74 A.3d 465 (same), cert. denied, 310 Conn. 952, 81 A.3d 1180 (2013).

We turn next to the defendant's claim that, even if the jury had been presented with, and based its award of damages on, other provisions of the contract, those provisions would not entitle the plaintiff to recover repair damages as a matter of law. The defendant raises four distinct arguments in an attempt to show that the trial court improperly relied on article 9.1 of the contract in declining to set aside the jury's verdict. First, the defendant argues that the plaintiff "never alleged or claimed . . . breach of warranty . . . in any iteration of its complaint," and that the trial court unfairly

interjected "an entirely new cause of action" into the case. The defendant's brief, however, has cited no support for the proposition that the plaintiff was legally required to plead breach of warranty as a separate cause of action. Several Superior Court decisions have, in fact, reached the opposite conclusion, reasoning that a breach of either an implied or express warranty can also constitute a breach of contract. See *ACE American Ins. Co.* v. *Hunter Mechanical, Inc.*, Docket No. CV-19-6040496-S, 2020 WL 3791480, *4 (Conn. Super. June 15, 2020) (granting defendant's motion to strike separate claim for breach of warranty and permitting plaintiff to replead as part of simple breach of contract claim); *Ferrigno* v. *Pep Boys—Manny, Joe & Jack of Delaware, Inc.*, 47 Conn. Supp. 580, 582–83, 818 A.2d 903 (2003) (violation of implied warranty requiring automobile services to be performed in workmanlike manner alleged as simple breach of contract); see also *Total Look of Southport, Inc.* v. *Rock Bottom Furniture & Carpet, Inc.*, Superior Court, judicial district of Fairfield, Docket No. CV-17-6066733-S (January 30, 2019) (67 Conn. L. Rptr. 784, 786) ("[t]he breach of warranty claim adds nothing more to this lawsuit than the breach of contract claims"). We, therefore, decline the defendant's invitation to conclude that the plaintiff was precluded from recovering under article 9.1 of the contract, as a matter of law, simply because the allegations relating to defective work were not alleged as a stand-alone claim for breach of warranty.

Second, the defendant claims that article 9.1 cannot permit recovery because the contract does not define the "guarantee or warranty period" during which it would apply. See footnote 7 of this opinion. The defendant's claim is not supported by the record in this case. Although the contract itself expressly indicates that the warranty period is established by the "[c]ontract [d]ocuments," a category that includes a number of other documents by definition,[10] the defendant has failed to submit the contents of these documents—or even to discuss them—in briefing the present appeal. Even if the warranty period had been completely omitted by mistake, we fail to see why the only reasonable conclusion that the jury could have reached is that article 9.1 of the contract was rendered unenforceable as a result of that omission. The jury also could have reasonably concluded that, whatever warranty period had actually been intended by the parties, the claims related to the defective work in the present case would likely have fallen within that period because the complaint was filed only weeks after the defendant abandoned its work on the project.[11]

Third, the defendant argues that, even if it was presented to the jury, article 9.1 of the contract cannot support the jury's award because the plaintiff never provided formal notice of the defective work. We observe that, unlike other provisions, article 9.1 of the

contract uses the phrase "promptly after notice from the owner" and does not require "formal notice" or written notice. Compare footnote 6 of this opinion (text of article 11.2) with footnote 7 of this opinion (text of article 9.1). Whether such a notice was provided by the plaintiff is a question of fact. Cf. *T. J. Stevenson & Co., Inc.* v. *81,193 Bags of Flour*, 629 F.2d 338, 359 (5th Cir. 1980) ("[N]otification of breach of warranty [under the Uniform Commercial Code] need not be in any particular words and is ordinarily a question of fact, looking to all the circumstances of the case. Notice need not be written. It may be given in a single communication or derived from several." (Footnotes omitted.)). The defendant has failed to provide this court with any trial transcripts. See footnote 3 of this opinion. Without an adequate record of the proceedings at trial, we have no way of determining whether evidence of the "formal notice" the defendant claims is a condition precedent to invoking article 9.1 was ever presented or argued to the jury during the trial.[12] See, e.g., *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 656 n.6, 954 A.2d 816 (2008) ("[i]t is the responsibility of the appellant to provide an adequate record for review" (internal quotation marks omitted)). As a result, we are unable to assess the defendant's claim that the evidence was insufficient to support the jury's damages award.

Finally, the defendant argues that the trial court's reliance on article 9.1 of the contract renders article 11.1 of the agreement superfluous. This argument also lacks merit. Although both articles 9.1 and 11.1 of the contract address the plaintiff's remedies for defective work, they differ in significant ways. Most notably, article 9.1 addresses the narrow topic of defective work and permits the plaintiff to recover repair costs by demanding direct payment from the defendant. See footnote 7 of this opinion ("shall be paid by [s]ubcontractor to [c]ontractor on demand"). Article 11.1, by contrast, addresses a wider range of conduct and permits a different form of relief, namely, retention of the balance to bill. See footnote 5 of this opinion ("[c]ontractor may . . . deduct the cost[s] [of labor, material, and equipment] together with all losses or damages occasioned thereby . . . from any money then due or thereafter to become due to the [s]ubcontractor under this [a]greement"). The fact that these two provisions provide alternative means for the plaintiff to recoup the cost of repairing defective work does not require the conclusion that one renders the other superfluous.

Apart from its arguments relating to the text of article 9.1, the defendant makes the broader contention that, because the plaintiff only invoked article 11.1 of the contract in the letter sent on May 19, 2017, its recovery was limited to the balance to bill. An award of additional money damages, the defendant argues, could have only followed a formal termination of the contract pursuant to article 11.2. Article 12.7 of the contract, however,

provides: "All of the rights and remedies of [c]ontractor under this [s]ubcontract shall be cumulative, and shall be in addition to any other rights and remedies of [c]ontractor. The exercise by [c]ontractor of any particular right or remedy on any one occasion shall not be construed as a waiver of any other right or remedy which [c]ontractor might elect to pursue on the same or any other occasion. Similarly, [c]ontractor's failure to exercise any particular right or remedy on any one occasion, or thereafter shall not be construed as a waiver thereof." Concluding that the singular reference to article 11.1 contained within the letter precluded the plaintiff from seeking relief under other provisions of the contract would contravene this plain and unambiguous language. As a result, we reject the defendant's claim that the mere reference to article 11.1 in the letter limited the plaintiff's relief, as a matter of law, to a retention of the balance to bill.[13]

On the basis of the record before us, we conclude that the defendant has failed to meet its burden of demonstrating that the jury could not have reasonably reached the verdict that it did. As a result, the defendant's claim that the trial court erred in denying the motion to set aside that verdict must fail.

The judgment is affirmed.

In this opinion the other justices concurred.

* March 16, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Although the phrase "balance to bill" is not defined in the contract, the parties in the present case agree that it refers to "any money then due or thereafter to become due" to the defendant under the terms of the contract. See footnote 5 of this opinion. The precise method of calculating this sum is not in dispute.

[2] The operative complaint contained two additional counts that, respectively, sought indemnification for certain expenses incurred by the plaintiff and alleged unjust enrichment. In response to the complaint, the defendant pleaded various special defenses and counterclaims. These issues are not, however, relevant to the present appeal.

[3] The defendant has affirmatively declined to provide this court with transcripts of these proceedings. Specifically, the defendant sent a letter to the Office of the Appellate Clerk on April 1, 2019, stating: "No transcript[s] [are] deemed necessary to prosecute this appeal." By that representation, the defendant failed to make the trial transcripts a part of the record on appeal.

[4] The total amount of damages sought by the plaintiff was $865,765.78.

[5] Article 11.1 of the contract provides: "If, in the opinion of the [c]ontractor, the [s]ubcontractor fails at any time to supply a sufficient number of properly skilled workmen or sufficient material and equipment of the proper quality and/or quantity, or fails in any respect to prosecute the [w]ork with promptness and diligence, or fails to promptly correct defective work, or causes by any action or omission the stoppage or interference with the work of the [c]ontractor or other subcontractors or fails in the performance of any of the covenants herein contained, the [c]ontractor may, at its option, after having given [s]ubcontractor notice of said defects and/or defaults and [twenty-four] hours for [s]ubcontractor to commence to cure said defects and/or defaults, provide such labor, material and equipment and deduct the cost thereof, together with all losses or damages occasioned thereby, from any money then due or thereafter to become due to the [s]ubcontractor under this [a]greement."

[6] Article 11.2 of the contract provides: "In addition to any rights of [c]ontractor under the prior paragraph, if, in the opinion of the [c]ontractor, the [s]ubcontractor at any time fails or refuses or neglects to supply sufficient number of properly skilled workmen or sufficient materials or equipment

of the proper quality and/or quantity, or fails in any respect to prosecute the [w]ork with promptness and diligence, or fails to promptly correct defective [w]ork, or causes by any action or omission the stoppage or interference with the work of the [c]ontractor or other subcontractors, or fails in the performance of any of the covenants herein contained, or fails to make payment to any of its subcontractors or vendors or employees or any union benefit funds or taxes, or is otherwise not able to meet its debts as they mature, the [c]ontractor may, at its option at any time, and after serving written notice of such default with direction to cure same within [three] days as well as the [s]ubcontractor's failure to cure the default within [three] days, terminate this [a]greement for [s]ubcontractor's default by delivering written notice of termination to the [s]ubcontractor. Thereafter, the [c]ontractor may take possession of the plant and work, materials, tools, appliances and equipment of the [s]ubcontractor at the [p]roject [s]ite and any material stored off site, and through itself or others provide labor, equipment and materials to prosecute [s]ubcontractor's [w]ork on such terms and conditions as shall be deemed necessary, and shall deduct the cost thereof, including without restriction thereto all charges, expenses, losses, costs, damages, and attorney's fees, incurred as a result of the [s]ub-contractor's failure to perform, which sums shall be set off from any money then due or thereafter to become due to the [s]ubcontractor under this [a]greement or paid directly by [s]ubcontractor or in the event that any sums remain unpaid after set off."

[7] Article 9.1 of the contract provides: "The [s]ubcontractor agrees to promptly repair and make good without cost to the [o]wner or [c]ontractor any and all defects due to faulty workmanship and/or materials which may appear within the guarantee or warranty period so established in the [c]ontract [d]ocuments. The [w]arranty will [e]nsure that:

"(1) all the work and materials furnished and installed by [s]ubcontractor as part of the [w]ork are in compliance with [c]ontract [d]ocuments and the approval of [o]wner and . . . [a]rchitect or [e]ngineer; and

"(2) that, promptly after notice from the [o]wner and/or the [c]ontractor regarding defective work or materials, the [s]ubcontractor shall immediately remove and replace said part of the [w]ork with [w]ork in strict conformity to the provisions of the [c]ontract [d]ocuments and shall bear the expense of making good all other [w]ork and property destroyed or damaged by the condition requiring such removal and replacement, or, should [c]ontractor or [o]wner, in their sole discretion, decide that such removal or replacement is not expedient, [c]ontractor shall have the right to accept said part of the [w]ork, in which event [s]ubcontractor shall be liable for paying the difference in value between the [w]ork required by this [a]greement and the [w]ork so furnished by [s]ubcontractor. The exercise by [c]ontractor of such option, however, shall not affect any right or remedy which [c]ontractor may otherwise have. In case of the failure of [s]ubcontractor to promptly remove and replace any part of the [w]ork as aforesaid, [c]ontractor shall have the right itself, or [through] others, to remove said part of the [w]ork and to purchase from others in the market or otherwise and install new materials or equipment in replacement thereof, and the cost and expense thereof, together with the expense to [c]ontractor of making good all other work and property destroyed or damaged by the condition requiring such replacement, shall be paid by [s]ubcontractor to [c]ontractor on demand. Anything in this [s]ection or any other [s]ection of this [a]greement to the contrary notwithstanding, [s]ubcontractor shall also make good, replace or repair all electrical, mechanical and other equipment, including bearings which have been damaged by physical injury or have deteriorated from rust, dust or other causes during the progress of the [w]ork."

[8] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[9] The defendant's brief posits, in a conclusory fashion, that the trial court lacked subject matter jurisdiction over the plaintiff's breach of contract claim because no "practical relief" could ultimately be afforded on it under the terms of the contract. (Internal quotation marks omitted.) The plaintiff's request for money damages in the present case was, however, sufficient to render the matter justiciable. See, e.g., *Burbank* v. *Board of Education*, 299 Conn. 833, 841 n.11, 11 A.3d 658 (2011); see also *All Cycle, Inc.* v. *Chittenden Solid Waste District*, 164 Vt. 428, 435, 670 A.2d 800 (1995). The defendant's contention that the contractual provisions at issue legally preclude such relief relates to an analysis of the merits of the case, not to the threshold issue of jurisdiction. See *Milford Power Co., LLC* v. *Alstom Power, Inc.*,

263 Conn. 616, 626, 822 A.2d 196 (2003).

[10] Article 9.1 of the contract provides in relevant part that the defendant "agrees to promptly repair and make good without cost . . . any and all defects due to faulty workmanship and/or materials which may appear within *the guarantee or warranty period so established in the* [*c*]*ontract* [*d*]*ocuments*. . . ." (Emphasis added.) Article 3.1 of the contract, in turn, defines the phrase "[c]ontract [d]ocuments" to include a variety of documents such as the agreement between the plaintiff and the owner of the property.

[11] In a single sentence in its principal brief, the defendant raises a related argument that construction warrantees like those required under article 9.1 "typically" do not commence until work under a contract has been completed in full and accepted by the owner. Because this argument is unsupported by any citations to authority or independent analysis, we decline to consider it.

[12] The exhibits admitted into evidence during the course of trial reveal some correspondence between the parties about the defendant's substandard work. It is unclear from this record, however, if these precise issues were addressed by the defendant prior to its abandonment.

[13] This conclusion is also sufficient to foreclose the defendant's derivative claim that the trial court improperly declined to issue an instruction to the jury directing a verdict in its favor on the breach of contract claim on the ground that recovery was, as a matter of law, limited under article 11.1 to the outstanding balance to bill. Even if we were to reach the propriety of the jury instructions, however, a proper review of a claim of instructional error would require this court to have access to the relevant transcripts, including the presentation of evidence, the closing arguments of counsel, and a full copy of the instructions actually given by the trial court. See, e.g., *Kos* v. *Lawrence + Memorial Hospital*, 334 Conn. 823, 837, 225 A.3d 261 (2020) ("[I]ndividual jury instructions should not be judged in artificial isolation . . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.)).